IN THE
UNITED STATES DISTRICT COURT FOR
NEW JERSEY

BENJAMIN J. WHERRY, SR.,                    :
                                            :
         Plaintiff-Petitioner,              :
                                            :
         v.                                 :         Civ. Act. No.:_____
                                            :
CASE MANAGER COLE, FCI FORT                 :
DIX, CASE MANAGER CORDINATOR                :
DONAHUE FOR FCI FORT DIX,                   :
WARDEN J. HOLLINGSWORTH FOR                 :
FORT DIX,                                   :
                                            :
         Defendant-Respondents.             :
_____/

## MOTION FOR TITLE 28 U.S.C. § 2241(c)(3) WRIT OF HABEAS CORPUS PETITION ADDING A TITLE 18 U.S.C. § 3626 COMPLAINT DUE TO A REQUEST FOR AN IMMEDIATE INJUNCTION BY WAY OF T.R.O. PROSPECTIVE RELIEF VIA TELECONFERENCE HEARING AND/OR WRIT OF AD TESTIFICADUM TO BRING WHERRY SUB JUDICE

COMES NOW, Plaintiff-Petitioner Benjamin J. Wherry, Sr., ("Wherry"), pro-se, pursuant to Title 28 U.S.C. § 2241(c)(3), and Title 18 U.S.C. § 3626 with respect to prison conditions, filing a writ of habeas corpus. He further ask this Court for a Teleconference hearing per the dictates of Fed. R. Civ. P. Rule 72, to be conducted as a result of serious irreparable injury being committed by Defendant-Respondent Case Manager Cole, and Case Manager Coredinator("CMC"), Donahue, and/or Wherry request this Court if need be to issue a Writ od Ad Testificadum to be issued to bring Wherry before teh Court to express his need for a emergency temporary injunction without any further delay to protect him from irreparable injury, and/or issue a writ of habeas corpus petition grant. In support, the following is submitted:

## I. <u>Jurisdiction</u>

District Court's have jurisdiction arising from all suit complaints from federal facilities.  <u>See</u> Title 28 U.S.C. **§1691**.  Additional jurisdiction is attached in Title 28 U.S.C. § 2241(c)(3), whereas, a convicted American citizen is being held in a Federal Bureau of Prisons facility("BOP"), in violation of the Constitution, Laws and Treaties of America.  Wherry also submits additional authoritative subject matter jurisdiction under Title 18 U.S.C. § 3626, whereas, his current confinement violates his reserved Constitutional Right's under his Bill of Right's 8th Amedment against Cruel and Unusual punishment. Such, actions will be alleged below and committed perpetually by one Case Manager Cole and his colleagues at FCT Ft. Dix.

## II. <u>Request For Waiver of</u><br><u>Administrative Remedies Until A</u><br><u>Determination Is Made On Wherry's</u><br><u>T.R.O. Injunctive Relief Request</u>

Prisoners retain certain Right's under the Federal Constitution and their Bill of Right's.  Furthermore, prisoner's have an expressed right to challenge the nature of conditions of their confinement, and any inhumane treatment that encroaches upon the Eighth Amendment's Cruel and Unusual Punishment. <u>See</u>  Title 18 U.S.C. § 3626; <u>see also</u> **Brown v. Plata**, 179 L.ED.2d 969 (2011)(holding "[] As a consequence of their own actions, prisoner's may be deprived of rights that are fundamental to liberty.  Yet the law and the United States Constitution demand recognition of certain other rights.  Prisoners retain the essence of human dignity inherent in all persons. Respect for that dignity animates the Eighth Amendment prohibition against <u>cruel</u> punishment.  The basic concept underlying the Eighth Amendment is nothing less that the dignity of man.")(Kennedy,

--2--

J., joined by Ginsburg, Bryer, Sotomayor, and Kagan, JJ.).

Petitioner Wherry, is alleging egregious cruel and unusal punishment allegations which is and will result in irreparable injury if he is compelled to wait for the administrative remedy Process to conclude on his RRC and CCC Placement claims. As for Mr. Coles unprofessional actions whereas, he seeks to damage Wherry's integrity as a federal prisoner and/or defame his character which is discussed below, under Title 42 U.S.C. § 1997(e), Wherry does not have to exhaust, and/or he will receive retaliation for his complaints against Mr. Cole herein.[1]   Wherry did commence his BP-8 Adminstrative Remedy Process on the RRC and CCC claims herein, he is at the BP-9 statge to the Wardens office.

In adition, because of the maltreatment and unprofessional conduct of Case  Manager Cole, Wherry seeks intervention by injunction by this U.S. District Court.  And again, he does not have to exhaust under Supreme Court's Case, **Woodford v. NGO**, 165 L.ED.2d 368 (2006).

He further request that the defendant's be served by way of the Marshall 285 forms and copies of this petition in accordance with Fed. R. Civ. Proc. 4.  And, no more retaliation

---

1.   Wherry's issue is dealing with his 10%  halfway house date. If his (1)one year request is not put in to teh RRC and CCC Placement. He wil remain incarcerated passed the Intent of Congress under the 2007 Second Chance Act Title 18 U.S.C. § 3621.  His 10% date is August 24, 2014, which would make his (1)one year 2007 Second Chance Act date August of 2013.  The Administartive Remedy Process normally can take up to (90)ninety days and sometime months if there is continuances granted.  To add, Wherry, is alleging because he has served (16)sixteen years of actual confinement without including any goodtime credits, he needs the entire (1)one year placement in a RRC or CCC facility to obatin adequate medical and mental health care treatment by detached BOP doctors, and to obtain a job whereas, he is relocating to an entirely different state.  Society is totally advanced then when he was incarcerated over a decade and half ago.  Wherry also continue to receive

be committed against Wherry for him placing his constitutional violations before the Court.

Because of the need of intervention by this Court, Wherry pray's that this Court will (1) waive the administrative remedy process until the T.R.O. injunctive Telconference Hearing is conducted under Fed. R. Civ. Proc. 72, et seq., and/or (2) hold this 2241 writ of habeas corpus petition in abeyance until the pro forma remedy process is completed in which. Wherry has already commenced, so that Wherry can evoke this Court's attention to recommence this action if it surpsses his (1)one year August 24, 2013 2007 Second Chance Act date for RRC and CCC Placement, to desist and and all unconstitutional liberty interest and unconstitutional maltreatment aginst him by the defendant(s).

### III. Procedural History

1. In March of 1996, Wherry was Indicted through the mail in a (3) Count Indictment for 922(g) felon in Possession of a Firearm; 841(a)(1) Possession with Intent To Distribute 60.82 odd grams of cocaine bases(CRACK) and 924(e) felon in possession of ammunition. See USA v. WHERRY, N.D. Ohio Case No. 1:96-CR-86. The 924(e) charge was dismissed prior to the commencement of trial with a deal made by his defense counsel and the government that Wherry stipulate to being

---

irreparable injury by the hands of Case Manager Cole, who seek to defame his integrity and character as a federal prisoner in front of his peer-inmates. **e.g. infra.**

a felon convicted of a prior state offense facing time of
at least 1 year or more and the jury would hear any particulars
about his prior convcitions and Wherry could not testify in
his own defense.  **Id. § 2255 filing, dismissed.**

2.   On March 20, 1997, after serving a year plus under
house arrest and being placed back under house arrest after
a jury convicted him on the two count indictment, while Wherry
was facing a substantial sentence of 360 months to life, **id.
Sent Tr. @ N.D. Ohio dkt. sheet,** he would receive on April
9, 1997, a 235 month term of imprisonment to be served followed
by a (5)five year term of Supervised Release.  **Id.**

3.   In 2007, the Second Chance Act, was enacted under
the Bush Administration, and the U.S. Senate and Congress.
**See Demis v. Sniezek,** 558 F.3d 508, 514 (6th Cir. 2009), **sec.
2. Second Chance Act Procedural History.**

4.   Sometime in 2013, Wherry was arbitrarily and capriciously
transferred by someone within the BOP Administration in the
middle of the night, back to F.C.I. Elkton, Ohio against his
Physchiartist Dr. Ghanz written Orders for him not to return
there.  She's currently working as DAP Cordinator on the Westside
Compound here at Ft. Dix, and Wherry has made contact with
her through the e-mailing inhouse system.  Nevertheless, shortly
thereafter, various constutitional infractions by BOP staff
Members there, Wherry had his custody classification upgraded
from minimum out custody to in custody low here at Ft. Dix,
and again transferred arbitrarily and caprciously.  To be
brief, Wherry had a mental health breakdown which stemmed
from his initial reasons for such delapidated well being in
his normal state prior to the first one  at Elkton, Ohio when

he was in the SHU and thereafter transferred by an emergency
mental health transfer, his plea for help went unheard by
FCI Elkton's mental health staff.  **See**  **WHERRY v. C/O LIASON,**
**District of Massachusetts  Wherry seking help from the Court**
**there but the Court alleged it did not have jurisdiction despite**
**Wherry showing the connection to that case.  That case is**
**pending in the 1st Cir. being held in abeyance due to Wherry**
**not wanting to respond yet for reasons he will explain to this**
**Court at the teleconference hearing.**

     5.   When Wherry arrived at FCI Elkton, He was placed
on the Westside Compound for Administration & Orientation.
He would receive his initial team there by Case Manager Cole,
and Counselor Gonzales.  Wherry inquired about his visitor
fiancee getting approved for visitation and his halfway house
consideration and Mr. Cole informed him that a general request
of **60** to **90 days** is all that FCI Ft. Dix is is being made.
Wherry expalined his position about his extensive period of
incarceration whereas, he was on chronic care and had mental
health treatment and he was relocating to an entirely different
State and that He has a need to receive and 2007 Second Chance
Act of (1)one year consideration recommendation for a successful
reentry.  Mr. Cole informed Wherry that he would look into
the matter.  This took place after an happenstance talk with
Mr. Cole prior to then in which Wherry believed caused Mr.
Cole to commence his initial team right away, assuming because,
the call-out notification indicated Wherry would be on the
team docket at the time in two weeks.

--6--

6.    Again, Wherry accosted Mr. Cole a week or so later,
about his halfway house consideration.  Mr. Cole again stated
that, "we generally make a 60 to 90 days recommendation.
That's all that will be recommended but, if you have reasons
needed for moe time, we will make that request."  Wherry then
informed Mr. Cole again of his extensive incarcerational period
and other related reasons why he needed the entire (1)one
year.  In short, Wherry reiterated that, "I've been in for
almost 16 years and need the year for Mental Health Treatment
and Health chronic care and to have a more successful chance
of making a re-entry back into society.  I also am terrified
of coming back, whereas, in my recent transit, in talking
to 7 out of 10 guys the seven was back in for Supervised
Release violations.  And, I am relocating to another state."
Mr. Cole replied, "you've been in for a total of 16 years?"
Whery replied, "yes, I've never been home yet," and retiterated,
"I am scared to go back out in society without a meaningful
chance to adjust because, I witnessed a plethora of inmates
return."

Mr. Cole then stated that, "Let me look at your file
and see if you have a re-location request in it, then look
at some other things and see if I will make the (1)one year
halfway house request on your behalf.  I will have the halfway
houe packet done by the time the quaranteen is lifted in the
Eastside and all you will have to do is sign your packet once
you come over there.  But don't come looking for me because, I
have training and will not be back for a week.  I'll call you
over and you will probably be placed in 5751 until a bed
comes open."

7.    Subseqently, due to the quaranteen being still
instituted against housing unit 5752, for medical reasons,
Wherry was transferred over to Unit 5751 on the Westside
Compound here at FCI Ft. Dix.  When he came across Mr. Cole
on one of the walk ways, again, Mr. Cole confirmed that he
would be working on his halfway house request, but he has a long
waiting list.    Mr. Wherry after this occasion, stopped in
the staff alley a few more times to inquire about whether
or not his halfway house papers are being completed.  He was
told by Mr. Cole that he has a long waiting list, and that
Wherry's name was down the line.  On the last scenario's of
Wherry's quest to get his halfway house packet done, Mr. Cole
told Wherry again, "you will only be considered for 60 to 90
days recommendation."  Wherry then informed Mr. Cole about
their former encounterings about this issue to bring back
to his rememberance of Wherry's initial multiple request
for halfway house, and how he responded.  Mr. Cole again reaffirmed
that he had a long waiting list and he would probably not
get to Wherry's halfway house for about another week.  Again,
Wherry had to return to accost Mr. Cole about his request
being made for halfway house.

Mr. Cole informed Wherry again that, he would only be
making a 60 to 90 day recommendation.  Then Wherry again with
much patience, reiterated why he needed the entire year.
Mr. Cole then informed Wherry to put his request for (1)year
down on a cop-out and explain exactly why he needed the complete
year to re-enter society.  Wherry complied as directed.

8.    On yet another occasion, Wherry accosted Mr. Cole
about putting in his halfway house request at his office in

staff alley.  Case Manager Cole then told Wherry, "I'm backed
up with halfway house request, so you are on the list.  I am
going to be putting you in for 60 to 90 days recommendation."
Wherry replied, "I need one year again, for various reasons.
We've been here."  To be succintive, Case Manager Cole replied,
"okay, put down on a cop-out exactly why you need one year
halway house.  I want to be able to explain to my boss Mr.
Whitenour and Donahue exactly why you need that much time."
**See Ex. A. Cop-out Request Explaining exactly why Wherry needs
(1)one year halfway house.**  Again, Wherry complied, and within
ten minutes returned with the cop-out explaining his needs.

9.    The next day.  Wherry was summoned to Case Manager
Cole's office in staff alley.  He would inform Wherry to have
a seat.  He then stated that,  "I am going over your cop-
out request for halfway house. I do not see in your file where
you have had mental health treatment, it's not noted."  Wherry
replied, "how can that not be noted in my files when I was
sent on an emergency medical flight to Federal Medical Center
Devens and placed in a mental health unit?"  Again, Cole denied
seeing this information in Wherry's institutional file, and
he could have simply reviewed Wherry's procedural history
of transfer's and/or Wherry's last team done by Mr. Hayes
at FSL ELkton, Ohio noting this information in his progress
report.  Nevertheless, Wherry complied and attempted to assist
Mr. Cole the best way he could.

11.  Case Manager Cole then opened Wherry's  5 to 6 inch
BOP file that consisted of 15+ years of document's.  He stated
then, "Okay, let's go from day one 1997 when you first came
in at USP Lewisburg.  I want you to explain how you got transferred

from that point on in the BOP." Wherry asked, "why is that
relative when the breakdown in already in the computer?"
He replied, "Because, I need you to explain it so I can understand
it all, and expalin to my boss why you need the year you are
requesting. This is all part of the process. I can see
you have some serious incident reports. And your prior state
cases are for serious violence. So, if I am going to put
my name on this recommendation, I want to make sure I am doing
it right?"

Wherry then explained to Mr. Cole that his prior state
cases is not even scored underthe BOP's BP-15 custody classification
point sheet for violence because it's 15 years or older.
And, if Mr. Cole looked at Wherry's progress report done by Mr.
Hayes, he would have seen on the first page that he's incarcerated
under a non-violent offense category.[2]

Wherry also informed him of the Court's professional judgment
lenient treatment of him in the Northern District Court for
Ohio during his trial, conviction and sentencing hearing proceedings.
Wherry explained to Mr. Cole that, he had received an own
recognized bond, which consisted of him being placed under house arrest
And, even after was convcited, he remained on bond under house
arrest facing a substantial sentence of 360 months to life

---

2. Wherry was arrested for three prior cases of felonious assault.
Two cases received suspended sentences and he received 2 to 5
years sentence for the last with it being reduced from a 3 to
15 years and mandatory 3 years for the alleged gung used in the
crime. The gun specifications was dropped even though the alleged
victim was shot and again, Wherry's charges was aggrevated assault,
2 to 5 years. What Mr. Cole does not know is Wherry's initial
charging instrument in the state dealt with **"excessive force in
self defense,"** i.e., the case he received prison time on in the
State of Ohio was reduced to 2 to 5 years, and he was paroled

imprisonment.  Mr. Cole stated that this information was not
in Wherry's files, presumably at the time he was talking, he was
making reference to Wherry's PSIR(Presenetnce Investigation
Report).  **See** **ft. nt. 1., and 2.** **supra.**  Wherry went on to
add that he had been in a camp with outcustody level working
on a outside the fence gate pass without incident, until he
was arbitrarily and capriciously deprived of his outcustody
level points by FSL and FCI Elkton, Ohio staff, and the more
when he had the mental health crisis, Dr. Jacobs and Dr.
Clifford refused to aid him because they said he was melingering,
so Wherry received two uncalled for incident reports.  He
then was transferred to FCI Ft. Dix, a higher security level
facility and he has minimum time left on his sentence.

An argument ensued between Wherry and Case Manager Cole.
Mr. Cole felt in his mind that Wherry was not aiding him
enough with going over his extensive BOP file, in which, was
not Wherry's job.  In short to not belabor the point, Mr.
Cole stated; "That's it. Im done. I'm going to make my recommendation
and that's going to be it."  Wherry replied, "It is what it is.,
you do what you have to do and I will go from there."  Mr. Cole
went on to state, "if you do not like  my recommendation, you
can file a BP-8 administrative remedy process."  **See** **Wherry's**
**Cop-out @ Ex. A.** **Explaining Cole's initial recommendation of 180**
**days.**  Clearly, Cole's beligerant unprofessional conduct was
within 10 months under Ohio's State Parole Authority Shock Parole.
**See** **WHERRY v. GRONDOLSKY**, Dist. Ct. Mass. Case No. 10-40159-FDS
**Exhibiting State of Ohio Sentencing Transcripts.**

aimed at trying to provoke Wherry to respond aggressively. However, Wherry remained within the boundries of not committing a BOP prohibited rule of insulence against staff.

12. After Wherry e-mailed his family, fiancee, and contacted one of his current defense attorney's, Mr. Terez, in Cleveland, Ohio to express his frustration and disgust with how BOP staff here at Ft. Dix can simply ignore Congresses and the legislative branch intent concerning the 2007 Second Chance Act, and his need for real assistance to re-enter society, Wherry did exactly what he informed his people of liberty interest with his incarceration, he contatced the President Barack Obama, Attorney General Eric Holder and his U.S. Senator Representaive Sherrod Brown. **See** **Ex. B. Correspondences' sent.** Wherry, was re-summoned to Case Manager Cole's office in the staff alley, again, after these contacts were made.

Upon Mr. Wherry entering, Case Manager Cole stated, "I normally do not reconsider my own decisions, and I have spent way to much time on this already. However, I been looking over your file and see that some injustices has happended against you, and I am not going to get into some of them, I just don't want to go back and deal with them because, we cannot do anything about them, like how you got transferred here, I do not see any notations how and why they sent you here in your file, they just got rid of you and dumped you on us, and I spoke with Dr. Ghanz, and she informed me that she noted in your psych file she recalls your case and you were not suppose to be transferred back to Elkton, Ohio. I am just going to try an deal with the here and now and how we can do this on

your behalf." Wherry then apologized for his defensive demeanor
and expalined how he is frustrated with the perpetual injustices
beginning at USP Leavenworth Kansas back in 1998.  See **WHERRY
v. WARDEN BOOKER, et al.**, **U.S. Dist. Ct. for Kansas.**    Then
Cole kept trying to get Wherry to explain to him what happened
at FCI Elkton, Ohio by staff.  But Wherry, knowing he was
feigning towards him, and that Mr. Cole  could not be trusted,
stated that he did not trust him and he did not want to state
what staff did to him.  Mr. Cole then said, "what if I had
Dr. Ghanz tell you that you can trust me?  would you then
tell me?"  Wherry replied, "no, I do not trust you or any
staff in the BOP."  He then replied, "Never mind, I am going
to just handle this request for (1)one year halfway house.
You just have to trust when someone is really trying to  help
you.  I understand that you have been done wrong, but everyone
is not trying to harm you."  Wherry said, "well, I've been
hurt for so many years...," Mr. Cole cut him off and said,
"well you are going to continue to get hurt here if you don't
tell me what's going on," and had a wry smile.  Wherry stated,
I do not want to talk about it.  He then said, "I am going
to show you, Look.  This is the recommendation that I have
done for you, Look how long it is compared to these other
one's.  And, I have spent a lot of time on this.  I am going
to contact my boss Mr. Whitenour, and see if he will sign
off on it, but we still might face a problem with Mr. Donahue."
Mr. Cole then through physical antics, grabbed his security
radio and called for Mr. Whitenour the Unit Manager and requested
that he call him back on his office institution line. From
What Wherry could tell, Whitenour informed him that he would

--13--

come over to discuss this situation per Mr. Cole's request.
Mr. Cole stated also that he wanted to show Mr. Whitenour some
things within his file and why the (1)one year recommendation
should be made or something to that effect. However, Mr.
Whitenour never showed up as Wherry conversed with Mr. Cole
for well over 30 minutes or so about halfway house and his
plans when he get out.

   Wherry and Mr. Cole continued to have this extensive conversation
again while waiting on Mr. Whitenour to show up. He informed
Mr. Cole that he wanted to begin some re-entry programs that will
aid prisoner's getting released back into their communities.
He told Cole, "the budget is 6.6 billion dollars for the BOP.
For instance, you guys give a guy a bus ticket, enough money for
one meal and cab fair and the bus ticket that takes them home,
then you essentially tell us, go ahead, go back into society and
become a productive citizen," by the way you was not before you
went in." "How does this protect society, and you have guys that
has been in like me for a decade and half or longer?" Despite
Cole's negative views on Wherry's plans whereas he said, "if
one guy fails your programs, your entire program is a failure and
no one want prisoner's back in their communities and they've
been gone for twenty years...," Wherry still acted cordial and
stated, "I do not     know where you've been, but American's
in my community want their family members home especially,
where they are incarcerated under lenghty sentences for non-violent
offenses." Finally, after more conversations, they got back on
track.

Wherry was not permitted to read Mr. Cole's Recommendation made on his behalf for (1)one year Halfway house. Mr. Cole read briefly from his statement, turned the computer around, and pointed to what he called a extensive request made for halfway house on Wherry's behalf, in which, it appeared to be roughly one and a half inches long.  The paragraph was succintive, in relation to what he needed those making the decision for Wherry to know with his extensive case file and criminal case as an whole and he's entitled to under Title 18 U.S.C. § 3621 (5)five factors for receiving a (1)one year recommendation.

Because, after Mr. Cole read this small paragraph it did not include none of the reasons Wherry placed on the cop-out per the dictates of Mr. Cole, to the best of Wherry's knowledge, in what Cole read to him.  As noted below and above, Wherry submitted an e-mail correspondence to the Warden and A.W.'s offices.  <u>See</u> **Ex. B. Attahed e-mail to Leter to the President.**

As noted in the e-mail, Wherry simply informed the A.W. and Warden's offices about his extraordinary treatment during trial by the Judge Kathleen O'Malley that presided over his case with him being palced on halfway house during trial after his convictions and before his sentencing commenced. He also notified them of other relative information left out by Mr. Cole, clearly intentionally concerning Wherry's history. Wherry made these e-mails furthermore, because Warden J. Hollingsworth has stated to Wherry on at least two occasions, once at A & O and during another conversation that under the (5)five criteria functions of Title 18 U.S.C. § 3621, number (3) is the most important and when he is making his decision, i.e., "(3) the history and characteristics of the prisoner,"

--15--

what he's going to be focusing on the most."

Therefore, as a matter of Warden J. Hollingsworth decision to handle request like this, it is clear that he has given these polestar directives to his Case Manager's staff and more than likely though his Case Manager Cordinator Mr. Donahue. Simply, Mr. Cole in filing for Wherry's request for (1)one year halfway house abdicated his duty to include crucial history and characteristics information that can be added way beyond the BOP history and characteristic's information inside or Wherry's BOP file, and this information was readily accessible to him in Wherry's BOP file and the more made privy to him based on Wherry being told to fill the cop-out request to explain exactly why he needed the full (1)one year term of halfway house. Simply, the precise candidate for halfway house would be Wherry, who proved that he was on pre-trial under house arrest for well over (1)one year without incident, dropping monthly urines and not violating that supervised provisons of the Court while on bond.  Wherry is/was entitled to this information to be placed in Mr. Cole's recommendation per the dicates of Title 18 U.S.C. § 3621, sec. (4) & (5), so that the Case Manager Cordinator Mr. Donahue can make a more reliable decision on his Unit Teams Recommendation of (1)one year halfway house made on Wherry's behalf.

13. On March 20, 2013, Wherry was called into Mr. Cole's office from his work detail at Safety Department. He was informed by his supervising C/O work detail boss to report back to his Unit to See Mr. Cole at recall.  Mr. Wherry has submitted a cop-out concerning his good time that should not have been taken for minor BOP infraction 300 series incident

reports.

Upon arriving at Mr. Cole's office at staff alley,
Mr. Cole stated that, "I cannot help you with your request
made concerning your good time that you are trying to get
back.   Anything dealing with good time or your sentence length
must be made to Ms. Hernandez over at R & D."  Mr. Wherry
replied, "okay."   But, he stated. "hold on a minute.  You
know that cop-out you sent to the A.W.'s office over the weekend
for better words less than shit, caused a big stink." **Id**. @
**Ex. B. Attached To Presidents letter**.  He went on to state
that, "I don't need other people in the A.W.'s office knowing
about a special recommendation being made on your behalf."
Wherry said, "what's special?  What did I say wrong?  I simply
informed the Warden and A.W. about other information that
was not privy to him in your Recommendation request that was
made on my behalf so it can aid them with my decision for
halfway house placement."  "No, you can do that, but you just
have to let things take its course.  So, chill out.  I don't
want people seeing this in the A.W.'s Office."[3]

14.  On March 21, 2013, the very next day, Wherry
was again summoned back to Mr. Cole's office at staff alley.
Case Manager Cole was speaking with Counselor Dickson at the
time.  Once Dickson left, Mr. Cole told Wherry that, "Your
halfway house recommendation is back and it's not good, it's an
unfavorable decision."  Wherry said, "okay, what's it saying?"
Mr. Cole stated, "My boss Case Manager Cordinator Donahue
denied the (1)one year request and only recommended
180 days.  If you want, you can file a BP-8 remedy.  Mr.
Gonzales isn't here, you can get it from Mr. Dickson tommorow.

That's it."  "Okay, fine," Whery replied and Mr. Cole further stated, "look I did my job, that's all that I can do."  Wherry said, "fine."  And as he was going to leave out of the office. Mr. Cole again asked him whether or not he would file a BP-8 remedy.  Wherry simply brushed him off politely.  However, Mr. Whery returned shortly to find out the CMC name.  And, again, Mr. Cole stated that, "you can file a BP-8 if you are dissatisfied."  Wherry said, "okay."

15.  Wherry went to the law library, and drafted up a correspondence as noted above, to the President, Attorney General and one of his U.S. Senator's.  **Id**.  Although, these legislative members are busy, they do take out the time to consider real genuine correspondence made to their cabinet and offices.[4]

Wherry, on the next morning went to mail the correspondences through the FCI Ft. Dix Legal Mail process.  He had to unfortunately deal with the totally unprofessional conduct of Mr. Dickson.

---

**3.**    It is totally unclear what Mr. Cole meant by "I don't need other people in the A.W.'s office knowing about a special recommendation made on your behalf."  This does not make sense because, the halfway house packet still has to pass through that office's gateway. But he did state that the Warden never see my e-mail anyway, because the secretry handles those corresp-ondences.

**4.**    Wherry asked Counselor Dickson on one occasion to give to Mr. Cole the Cop-Out regarding his request for good time to be re-instated.  Mr. Dickson stated, "I don't want it, stick it under his door.  So, on this occasion dealing with the correspodnence going out to the President, Senator and Attorney General, Wherry being a gentleman and not want to blindside Mr. Cole by any responses from those offices in the legislative branch put his copy under his door, i.e., the letter's talked about above and nothing else.

Mr. Dickson stated upon receiving the letters being mailed
to the legislative branch,"you're writing the President?
It wont do you any good." He then started laughing.  Wherry
in frustration stated that, " We'll see who is laughing when
their cabinet and offices inquire about what I am writing
them about." "Yea right, okay.  Step out of my office." Wherry
complied and stood outside of his door and placed his hands
inside of his pockets to not be taken as being hostile.

As Mr. Dickson took his time documenting the letters in
the Ft. Dix legal correspodennce log book, he then told Wherry
to sign the log book.  Wherry did not move and said, "Is it
alright for me if I step back inside of your office, you kicked
me out before?"  He replied, "how else is you going to sign for
them?  Sure, you can step in."  Then he took Wherry through
a big ordeal as he tried to obatin the BP-8 that Mr. Cole
told Wherry to retireve from Mr. Dickson based on his counselor
Mr. Gonzales not being available.  The BP-8 was to challenge
Mr. Donahue's decision.  Wherry received it.

Approximatley 15 minutes later, Wherry was summoned
by Mr. Cole to report to his office at staff alley.  Wherry
complied after his BP-8 administrative remedy form was completed.
Upon arriving to Mr. Cole's office, the subsequent conerversation
took place.

"What's this crap Mr. Wherry?"  Wherry respondend, "a
copy of the correspondences  that I sent out this morning
to the President and other legislative branch memebers." "Why
did you place it under my door?  If you are going to put some
crap like this under my door, why don't you be man enough

--19--

to hand it to me?" "Sir, I would have, but I was told by
Mr. Dickson before that he would not take nothing for you,
and to put it under your door." Mr. Cole responded, "well,
I don't care who told you what. Do not place anything under
my door, that includes drop notes. Anything that you or somebody
place under my door, I will shred, again, that includes drop
notes."[5] Wherry replied, by cutting Mr. Cole off. "Whoa,
what does a drop note have to to do with me putting a letter
to the President and other legislative members under your door?"
He replied again, "I'm just saying, anything that's put under
my door whether it be a letter or drop note I am putting it
right in the shredder." Wherry then stepped out of his office.
However, Mr. Cole ordered Wherry back in the office by direct
order, and kept up with his unprofessional charade of foolishness
holding his security radio in his hand on his desk.    Wherry
tried to speak up, and he said, "this is a one way conversation"
however, Wherry was eventually let go because, he stepped
out of his office again and begin to walk towards Mr. Dickson's
office to hand him the BP-8 administrative remedy.  Mr. Cole
yelled to Wherry, "what's this mess?  You have all kind of
typing errors and mistakes....," and Wherry replied, "exactly, I
have minimum education that's why I need the (1) one year halfway
house."

     16.  Wherry would thereafter go through a tyrad of summons
being called back to staff alley over the institutional speaker

---

5.    A drop note is a reference in the BOP used by staff and inmates
to snitch out other inmates.  This language has no bearing on
Wherry's interaction with Mr. Cole nor with the correspondence
sent to legislative branch members.  Clearly, Mr. Cole actions
constitute him trying to defame and slander Wherry's reputation
and character whereas, there was other inmates present in the
staff alley.

for him to report back to staff alley by Counselor Dickson and
Case Manager Cole.  And, he was informed that the page was
made in different units, and there is an individual unit paging
component.

17.  On March 22, 2013, upon Wherry's fiancee who traveled
to Fort Dix all the way from the State of North Carolina to
visit him, being rejected for visitation due to the Eastside
compound visiting room being shut down based on allegedly
a security breach concern.[6]  Wherry, went to the mess hall
for lunch having his visitation complaint and halfway house
complaint in concern when he went to speak with any Warden staff members.
The Warden was there.

While initially standing in line waiting, Wherry noticed
case Manager Cole and Unit Manager Whitenour standing roughly
15 to 20 feet feet behind the warden.  After a few minutes
of standing there, Wherry noticed Mr. Cole and Whitenour
walk away.  Wherry and his witness went to eat then returned
to the line, CMC Mr. Donahue appeared walking by him.  Wherry
learned his identity after another inmate accosted him about
his matters.  Then, Wherry begin to converse with him about
the 180 day Recommendation made by him striking out his Unit
Team Manager Mr. Whitenour and Case Manager Cole's Recommendation
based on a  collective  or generalized understading to all

_____

**6**    It is unclear how the Warden and A.W.'s can have visitation
on the same day of the breach of security Thursday (3-21-13)
supposedly occurred and run the visits all day long until 3:00pm,
with work call and a re-opened compound, and then inform inmates
that visiting and commissary is suspended until further notice.
**See Ex. C.**  It should be noted that the visiting room is a separate
secured building fdrom the housing units, and the entire
compound was initially in their units under lockdown status except

all inmates and each individualized case facts and institutional
file.[7]

Wherry then stated, "so, do your decision negate my
unit Teams decision for a (1)one year recommendation?"
Mr. Donahue then replied, "oh no. Your Unit Teams decision
is still there. It is up to the Warden to determine which
one he'll go with." The conversation ended. Wherry returned
to the waiting line for the Warden.

18. After roughly a (30)thirty minute wait, Wherry
finally reached the Warden. Because of the large volume
of inmate complaints dealt with the visiting room being
shut down after Thursday visits that ran all day without
incident, and inmates being notfied late that day approximately
at 3:00pm give or take some minutes expalining to all inmates
via e-mail that visits and commissary was suspended until
further notice, families already lodged at the Airforce base
and other surrounding hotels would not be permitted entrance.
Soon as Wherry reached the line, the Warden attempted to
speak to the inmates as a group collectively.

_____

for feeding times, and those was done under controlled movements
inpart, so no one could get to visitors on the day of the breach
of security, but their inamte family members that they came to
see. This decision was clearly a abuse of discretion whereas,
families came from all over the world and this Nation to see their
loved ones and with a pressing economy as is, the Warden simply could
have limited visiting hours to a half an hour whichever he saw it
fit, so that family members , like my fiancee did not have wasted
invaluable limited financial resources.

7. It should be noted that Mr. Cole informed Wherry that Mr. Donahue
stated that "due to your prior criminal history, your two old fighting
incident reports and being in a camp twice and not staying their, and
your extensive programing history which you can get a job quicker
than any other inmate, and you gained a released address and your prior
criminal cases being serious, Mr. Donahue states he is only recomm-
ending you for 180 days halfway house." Wherry states as told other
staff, "the only difference in him going to the halfway house in 6 mont
as opposed to one year, is he will not have the invaluable opportunity
--22--

Nevertheless, Wherry continued with his request to speak with the Warden on an individualized basis.  He virtually stated  to Him, "Hello Warden, I respect you speaking to everyone at once, but, I need to speak to you individually." He responded, "Hold on, let me adddress this...."  And, the Warden went on for a while discussing why he shut visiting down.

Again, with patience, Wherry made a few more pleas to speak with the Warden on an individual basis.  Finally, the Warden steeped aside about 3 feet to the left of teh waiting line, and said, "Okay.  Let me hear your complaint." But asked first, "who is this?"  Wherry replied, "he is with me."  Then the Warden replied, "you have to get rid of that USP mentality.  I don't take people with me on the street to talk with other people about my complaints." Wherry replied, "I'm not on the street, I am in prison and I don't want to be seen talking to staff alone."[8]

Nonetheless, Wherry tried to explain his situation about his halfway house, forgetting his visitation complaint because he had already heard the Warden's drawn out erroneous summation of position in why he closed down visiting stating that it was a breach of security.  **See Ex. C. Notification to inmates.**  But again, Wherry kept trying trying to speak about his situation, but, the Warden kept cutting him off. The Warden would say, "are you familiar with the five criteria's

---

to prepare to re-enter society.  Whether he goin 6 months or 1 year the incident reports will still be there and his prior state cases. This just do not make sense.

8.   Wherry has received multiple adverse reactions similar to what Mr. Cole is doing to him making it seem like things are that  are not.  **See ft. nt. 5. supra.**  Wherry will thoroughly explain to this Court exactly what the BOP staff has done over his extensive period of incarceration at different facilities to retaliate against him.

that makes you eligible for the 2007 Second Chance Act?"  Wherry
replied, "Yes I am, I am familiar with Title 18 U.S.C. §
3621.  I just want to get into the crux or exact nature
of my complaint I am making."  Wherry was cut off again
and on several more occasions.   And the Warden begin after
Wherry refused to entertain the  criteria's for halfway house
and informed the Warden that his position on the (1)one year
recommendation  was explained to him at A & O by him.   Yet
again, the Warden went on to state anyway, "I am big on (2) and
(3),is what I really look at.  You know what that is right?"
Again, Wherry did not respond.  He then said, "the history
and characteristics of the prisoner."

Finally, Wherry said, "this is what I have been trying to
explain to you Warden, information regarding my recomendation
for RRC placement that may not be made privy to you when
you review my file."  He said, "alright, go ahead."  And,
Wherry stated the following; "I was on Bond for my trial
and sentencing facing 360 months to life, and given House arrest
for over (1)one year, I never violated the conditions of
my bond, pre-trial release or house arrest.  In fact, after
my two count trial conviction occurred by a jury, I was
again placed under house arrest, and was allowed to remain
with my family until my sentencing commenced.  I would receive
235 months and I returned back to the Court on my own volition."

Now, Wherry made this statement due to criteria (4)
under Title 18 U.S.C. § 3621, which states that "any statement
by the judge that imposed the sentence," can be made in
the recommendation."  See  **Title 18 U.S.C. § 3621 Sec. (b)(4).**

Now, the district court Honorable Judge Kathleen M.
O'Malley, made extensive statements regarding Wherry's respect
he gave the Court and dealt with it, his overrepresentation
of criminal history  and her inability to go below the then
mandatory crack guideline poilicies.  **See** Sent Tr. @ **U.S.
v. WHERRY**, N.D. Ohio Case No. 1:96-Cr-86 April 9, 1997 dkt.
**entry.**  However, because the sentencing transcript is not
in Wherry's BOP file, presumably.  Case Manager Cole should
have simply reviewd Wherry's Judgment & Commitment Order,
(" J & C"), where his sentencing Judge O'Malley placed in

the "Statement of Reasons" section that she gave him a §4A1.3
overrepresentation of criminal history departure in accordance
with Title 18 U.S.C. § 3553(c)(3), reasons for departing
from the the then mandatoiry guidelines.

Before leaving the Warden, Wherry asked the Warden,
"whether or not He would see the initial recommendation by Unit Team
or the second  recommendation made by CMC Mr. Donahue?"  He
replied, "I will only see the latter one submitted."

19.  Wherry then walked away and walked directly over to
Case Manger Cole and Unit Manager Whitenour, that had another
staff member standing with him.

He then stated to Mr. Cole who appeared uneasy and hostile
from his visage.  He started off listening with again, tension
on his face.  Wherry stated that, "Sir, I don't want you to
think I am doing something behind your back, I learned from Mr.
Donahue that his recommendation does not change my Unit Teams
recommendation.  Mr. Donahue said that, 'the Warden will see
both of them,' but the Warden says different.  I was under the
wrong impression when I left your office that the one done

--25--

by Mr. Donahue negates yours. So, I apologize." Mr Cole
replied, "You know Mr. Wherry, I was under the wrong impression
to. From what I unerstand, Me and Mr. Whitenour can still
make our request if we determine you need the one year."
Wherry responded, "I know now, and I apologize for that
because, I was under the wrong impression you gave me."
He then responded, "It's to late for that, you know that
little letter you gave to Mr. Dickson sending it to the President,
well that's mailed out." Wherry replied, "Yes Sir, but
if I said something that I was under the mis-impression,
I can retract it." The unnamed staff member butted in and
said, "You know, if you send something to the legislative
branch they are going to just send it back to us to deal with
it anyway." Wherry replied, "that's untrue. I received
responses in the past that dealt with genuine issue's."
Wherry turned back to Case Manager Cole and sdaid to him,
"I simply want what I have coming so that I can restart my
life over. I cannot believe you people can be numb to the
fact a  person,  that has been incarcerated over a decade and
half of time, can believe that he only needs 6 months to
re-enter society successfully." Mr. Cole responded, "look,
you almost killed two people and that can be looked at when
I determine your halfway house. Technically, I can simply put
you in for 60 to 90 days, because of your extensive programing,
then we can wait on your administrative remedies and responses
from the legislative branch to come back." "Oh really," Wherry
responded. "Sir, I did not come over here to argue with you,
and simply apologize for being under the wrong impression

you gave me." Mr. Cole then said, "you know Wherry, that little note you placed udnermy door...."[9]  Wherry stated, "that's it, me and you have nothing else to talk about. I never placed a note under your door and you know that it was a correspondence copy I sent to the President. You will be quoted  saying that," Wherry walked away as Mr. Cole kept saying, "come back here, I am not finished." Wherry turned and said,  "we are finished and I am going to quote you word for word and you are totally unprofessional."

This matter has esculated way out of control, and Wherry per the dictates of the constitution's 8th Amendment Cruel and Unusual Punishment has been encroached along with the Supreme Court's case, **Brown v. Plata**, 179 L.ED.2d 969 (2011), which held that:

> "2. As a consequence of their own actions, prisoners may be deprived of rights that are fundamental to liberty.  Yet the law and the United States Constitution demand recognition of certain rights. Prisoners retain the essence of human dignity inherent in all persons. Respect for that dignity animates the Eighth Amendment prohibition against **cruel** and unusual punishment.  The basic concept underlying the Eighth Amendment is nothing less than dignity of man. **(Kennedy, J., joined by Gingsburg, Breyer, Sotomayor, and Kegan, JJ.).**"

Wherry demands  the dignity owed to him by BOP staff under

---

9.    Again, Mr. Cole making this allegation that was not true nor relevant to Wherry's issue's because Wherry never placed a note under Mr. Cole's door.  It was a correspondence to the President, Attorney General and his U.S. Senator. **See Ex. B.**  Wherry will expound on the totality of this misconduct by Mr. Cole and explain how other staff members in the BOP has done the same at the teleconference and/or when Wherry is summoned sub judice.  There can simply be no ccorrection to Mr. Cole's action whereas, he is jeopardising Whery's safety under falsehoods! Totally unprofessional.

the Eighth Amendment of the U.S. Constitution.  And, Because
of the perpetual mistreatment and irreparable harm that the
BOP is committing against Wherry, whereas by dint, he was
placed on a mental health transfer, by way of being committed
in an  inpatient local local ward hospital in the outside
community in Elkton, Ohio and thereafter sent to Federal Medical
Devens on a emergency metal health transfer air flight, whereas,
committed in the mental health unit and forced medicated with
psychotrophic medication, as a result of BOP staff memebers
actions against him clearly retaliating against his for his
complaints of inhumane treatment while houe in their facilities.
This Court must stop, as a matter of protection of human right's,
Wherry's inhumane treatment and mental health sufferrings
which are perpetual, by way of Title 18 U.S.C. § 3626, et
seq., temperary injunctive prospective relief.  **See  Also**
**Torture Statute 28 U.S.C. § 2340(1)(2)(A)-(C).**[10]

    Lastly, the (5)five criteria's for relief under Title
18 U.S.C. § 3621 that deals with the Second Chance Act clearly
makes Wherry a prime candidate for (1)one year RRC or CCC
palcement based on the relative information placed sub judice,
in this petition.  Any liberty loss that is unnecessary,
whether it be one minute, one day or one month more can
constitute irreparable injury.  In fact, the nature of Wherry's

---

10.  Wherry has repeatedly tried show federal Court's that
he is currently confined in violation of the Constitution, Laws
and Treaties of America. **See  Wherry v. Grondolsky**, Dist. Ct.
of Mass. Case No. 10-40159-FDS; **Wherry v. Tripi, et al.**, 2012 U.S.
Dist. Lexis 40524; **Wherry v. Farley**, 2012 U.S. Dist. Lexis 32298;
**Wherry et. al., v. Administrative Office of the United States**
**Courts**, 2011 U.S. Dist. Lexis 70123.  However, he has not had
any federal court intervene on his behalf.

complaints, standing alone should raise eyebrows of this Court's legal authority to provoke it into action, and under the Federal Rules of Civil Procedure Rule 12, et seq., must be taken as true until rebutted by proven otehrwise, constitutes irreparable injury.  Wherry will prove his case standing alone in the cases cited <u>supra</u>., which are even more not cited against the BOP in various jurisdictions throughout this nation.

Furthermore, Wherry was impeded from making crtical history and characteristic information about him him in the recommendation Mr. Cole was submitting to Mr. Donahue and the Wardens office for review and approval of the (1)one year recommendation that Mr. Cole perfunctorily submitted, although Wherry did as directed by Cole and submitted this information  in a cop-out for reasons to show why he needed the halfway house time.  **See Ex. C. Wherry's Cop-out to Mr. Cole.**

This Court must intervene as a matter of law and protection of Wherry's Human Right's and themore protect Wherry's liberty interest thus, relieving Wherry of his incarcerational burdens by teh BOP that it and his employee's actions are clearly unconstutitional and a infringement of Wherry's liberties.

## VI. <u>Relief Sought</u>

Because, Wherry is schedulaed to be released on or about August 24, 2014, if Wherry gains his request for a recommendation of (1)one for the 2007 Second Chance Act, He can be released on or about August 24, 2013 give or take a few days depending on whether or not He receives the full 365 days are granted to him by the RRC and CCC placement Committee.

--29--

The relief and in junction sought by Wherry will be the least intrusive,[11] to protect Wherry's inherent federal right's under the Constitution, Laws and Treaties of America, whereas, He is subjugatedly being deprived under essential BOP Policy Statements and Title 18 U.S.C. § 3621 governing congresssional statutes to have material and relative history and characteristic information given to the RRC routing process offcials to make their reliable decision whether or not to grant him the recommendation his Unit Team has perfunctorily submitted thus far on Wherry's behalf. **supra**.

Furthermore, in repect to Title 18 U.S.C. § 3626, et seq., due to the actions of Case Manager Cole and other BOP employee's, wrongful unforfessional conducta nd actions committed against Wherry, which will be further elaborated on during the Teleconfernce proceedings conducted, and disgussed already herein inpart, this Court must decist the aribtrary and capricious actions of the BOP employee's from acruing any further, whereas, Wherry is receiving irreparable injury from BOP staff.  If Wherry is subjugated to remain in the custody of the BOP,

___

11.   Wherry stated that, according to Title 18 U.S.C. § 3621, (5) five criteria's for receiving a (1)one year recommendation, according to the fifth prong which states that; "(5)any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28," the Case Manager Cole as a matter of law, and BOP policy should have recognized that Mr. Wherry's file in the BOP exhibits convictions for crack cocaine and simple gun possession.  The BOP here at Ft. Dix, has Memorandums up concerning the changes made to those prior conviction punishments. In 2007, and 2011, the United States Sentencing Commission under Amendments 706, 709, 741 and 750 made retroactive changes to sentenced defendant's under the 100 to 1 former ratio for a crack cocaine offenses and convictions in accordance with the legislative branch agreeing that the 100 to 1 penalty was too much and racially envoked, so the punishment was reduced to 18 to 1.  This information was not included in Mr. Cole's recommendation.  Wherry has not received any of this relief and his case is pending in the 6th Circuit Court of Appeals.  **See WHERRY v. U.S.**, COA No. 11-3042.

one hour, one day, one month, one year, or even one more
minute or second loss of liberty that will go beyond August
24, 2013, can be well said that Wherry is receiving irreparable
injury in connection to his liberty interest, mental health,
health, safety  and well  being situated in a BOP facility.
And/or, any other relief that this Court's deem  necessary
to hand out should be evoked by the Court sua sponte.  This
Court has the authority to Order Wherry's immediate release
to his Supervised Release address without aby further delay,
and/or bring him sub judice.

## V. Request For A Three Panel Judge
## To Decide On Injunctive Relief Sought
## By Plaintiff Mr. Wherry

Wherry makes a request for a (3)three panel judge to
issue a temperary injunction for relief he is seeking.  See
Title 28 U.S.C. § 2284.  Due to the grievious and graveness
of  Werry's claims  before the Court, once the teleconference
is conducted, and the totality of Wherry's complaints is heard,
this Court will in fact determine as a matter of law, it is
thi Courts inherent authority  and duty to protect any American
prisoner confined within its terrirory and jurisdiction
constitutional liberties under the Constitution Bill of Right's
and Title 18 U.S.C. § 3626, whereas, prisoner's only retain
certain liberties right's.  Brown, supra.

### C O N C L U S I O N

WHEREFORE,  because Wherry has made a prima facie showing
taht he is suffering an irreparable injury, he prays that
this Court will  GRANT him the relief that he seeks and/or
issue out any other relief that it will deem warranted to
remedy this matter. And, He further request that this Court

--31--

Court review this petition sua sponte unde the <u>pro-se</u> analysis
of <u>**Haines v. Kerner**</u>, 30 L.ED.2d 652 (1972). And, let this
matter be commenced without any further delay.

Respectfully submitted,

Mr. Benamin J. Wherry, Sr.
Reg. No. 35961-060
FCI Ft. Dix
P.O. Box 2000
Fort Dix, New Jersey 08640

## CERTIFICATE OF SERVICE

   I Benajmin J. Wherry, Sr., do hereby certify that the
forgoing  petition was placed in my Unit Team Members hands
with Marshal 285 forms for process of service on the defendant's
and exhibits attached.  First class postage due was was attached.
He has also included 285 Marshal forms for the Attorney
General and The President whom is is the BOP Respondeat Superiors
in this case.  I further certify that all of the content's herein
are made under Title 28 U.S.C. § 1746, to the best of my
knowledge, belief, understanding and memory of events that ocurred
and such are not fully illustrated herein, whereas, Wherry
want the totality of his claims submitted before thi Court on
record to protect him from further retalitory tactics of the
BOP and its Employee's that has proven will act to harm him
by their unprofessional propesity conduct.  This was mailed
on the <u>1st</u>, day of April 2013.

Mr. Benjamin J. Wherry, Sr.
Reg. No. 35961-060
FCI Ft. Dix
P.O. Box 2000
Fort Dix, New Jersey 08640

E X H I B I T S

A thru C

## EXHIBIT A

BP-S148.055 INMATE REQUEST TO STAFF CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) Case Manager Cole | DATE: 3/4/13 |
|---|---|
| FROM: Benjamin J. Wherry | REGISTER NO.: 35961-060 |
| WORK ASSIGNMENT: Safety | UNIT: 5752 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.  Continue on back, if necessary.  Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

Sir, per your instruction I am formally requesting per policy that a (1) one year recommendation be made per the dictates of the Second Chance Act for halfway house. I have participated in extensive programming and two (V-T) programs that I completed, Culinary Arts and Computer class. I have been incarcerated 16 years almost, come April 9, 2013. And, I have mental health issues which has been a repeated occurrence. I will need this time to better prepare for my return to society. I am unapproved to move to the

(over)

DISPOSITION:

Based on your prior convictions & non-convictions. And incident reports while incarcerated within the FBOP you will be recommended for 150-180 days of RRC placement.

| Signature Staff Member | Date 3-6-13 |
|---|---|

Record Copy – File; Copy – Inmate
(This form may be replicated via WP)          This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR '94

District of North Carolina from Ohio. I've never been there and I have not been in the community again in 16 yrs. The year will permit me a chance to obtain medical health care, psychological health care, employment and other gains at a reentry facility. I am being Released to a 1/2 way house. Please note. I was facing 360 months to life while on (bond. Home Confinement) After I was found guilty by a jury in the N.D. of Ohio - I successfully completed 13 months of House arrest and walked in a Court room to be sentenced to 235 months., i.e., 19.7 years. See inmate file. I have never been a threat to the Community. In fact, I recently had outer body. Due to a mental health break down that our custody was arbitrarily & capriciously taken away. Dr. Ghanz is my former Doctor from FMC Devens. Due to her prematurely leaving FMC Devens, my mental Health Care plans was changed by subterfuge. I simply need help. And 1 year halfway house would aid my reentry to Society. Thank you for your time.

<u>EXHIBIT B</u>

March 19, 2013

Mr. Benjamin J. Wherry, Sr.
Reg. No. 35961-060
FCI Ft. Dix
P.O. Box 2000
Fort Dix, New Jersey 08640

President Barack Obama
Office of the White House
1600 Pennsylvania Ave. NW
Washington, D.C. 20500

Attorney General Eric Holder
950 Pennsylvania Ave., NW
Washington, D.C 20530

U.S. Senator Sherrod Brown
713 HART BLDG
Senate Office Building
Washington, D.C. 20510

**RE:  Request for Immediate intervention and attention to my
      Rejection of "Recommended (1)year Halfway House by FT.
      Dix's Case Manager Cordinator Mr. Donahue.**

Dear Mr. President Barack Obama, A.G. Holder & U.S. Senator
Sherrod Brown:

     I am writing your cabinet and offices concerning my re-
entry process back into society.  It's very crticle that your
nobel office listen to my cry for assistance.

     In 2007, the Bush Administration created and enacted the
2007 Second Chance Act.  What this did was, lift the ban on
more that (6)six months  halfway house, extending it to (12)twelve
months.

     Recently, after an eventful painful request made to my
Unit Team Case Manager Mr, Cole of Bld. 5752 Housing Unit here
at Ft. Dix, FCI, he and my Unit Manager Mr. Whitenour made
a 330 to 365 days "Recommendation" for RRC placement.  **See
E-mail Attached.**  I then wrote that e-mail forementioned to
the Warden's & Associate's Warden's Office.  And, they confirmed
that my RRC was in routing.  **Id.**

     On March 18, 2013, I was called into Mr. Cole's office
my case manager cocerning an unrelated cop-out request made
to his office over the weekend.  He then expresse is dismay
about me sending the e-mail to the wardens office.  I was informed
by him that I should not have sent the e-mail attached because,
my recommendation was a special request and certain people
did not need to see in the A.W.'s ofice.

On March 19, 2008, I was called back into Case Manager Coles office and informed that my RRC placement was back and it was not a favorable response, I would be only receiving a (6)six month recommendation and that's all He could do, and that he done his part, if I want to file a BP-8½ I could do so when my counselor or Mr. Dickson came in tomorrow.  I later asked for the Case Manager Coordinator's name.

Because the BP8½ process is a drawn out process, usually handled by other parties then the Warden and/or A.W.'s, and can surpass my 1year request, I am caught in a catch-22, that will have an lasting effect on how long I will receive in the halfway houe, and ultimately receive the time needed to re-enter society.

I do not know the full details of why Mr. Donahue the CMC denied my Unit Team's recommendation.  Nevertheless, at the end of the reason, the conclusion would be an erroneous one that he was using incident reports that now has ben cleared on my record  in the BOP, and in May of 2013, will totally be clear, and/or lesson my security level again.

Thus, I ask if I am going to be palced in a halfway house facility for 6 months, what's the difference if I am palced in there for 1 year?  The only difference will be is I will have the needed time my Unit Team Recommended for me to effectively re-enter back into society.

Please note, I have served almost 16 years, come this April 9, 2013, that's without any goodtime added.  I am currently relocating to an entire different state, and despite me acquiring *housing* with my fiancee, it will still be a challange readjusting to society, finding work, clothing health care and mental health care, etc., the most basic fundamental's of everyday living for any citizen in America.

As your cabinet is most familiar withmy in justice done in this case already, I am now acosting it for another reason, because, there serves no penalogical goal or interest to cause me to be subjugated to an extra (6)six months of undue confinement. In fact, at this point, it can be considered cruel and usual punishment with the crack laws being changed since 2007, and further erradicated by this offices Fair Sentencing Act of 2010, and yet I still sit incarcerated with the BOP Ft. Dix. facility clearly making rulings against me ebcause I have consistently lodge complaints when unfairly tretaed by one of its facilities.

Please note Mr. President. the District Court for the Northern District Court of Ohio, made the folowing ruling in **Mallett v. Shartle**, 2011 US Dist. LEXIS 83967(Although the **BOP is authorized to place an inmate in home confinement or CCC, an inmate is not entitled to such palcement at anytime. 18 U.S.C. § 3624(c).  Mallets only entitlement is an individual evaluation for placement at a CCC consistant with the factors set forth in 18 U.S.C. § 3621").**

And, in all due respects, this is what my Unit Team did for me, hoever, the CMC in the routing process for reasons not supported by the 2007 Second Chance Act feels in its discret- I doe not need 1 year and 6 months should suffice to prepare me for re-enerting society.  Again, I've been incarcerated for a total of 16 years, not 16 months.  And, I have lost everything.  Clearly, I needed more than 6 months, if I did not, my Unit team that is dealing with my case file on a constent basis, not the CMC Donahue, would not have made the request for one year.

Please aid me with this matter without delay.  Thank you for your time.

Very truly yours,

Mr. Benjamin J. Wherry, Sr.
Reg. No. 35961-060


c:    file/bjw
      Unit Team

TRULINCS  35961060 - WHERRY, BENJAMIN - Unit: FTD-F-C

---------------------------------------------------------------------

FROM: Fort Dix Associate Wardens
TO: 35961060
SUBJECT: RE:***Inmate to Staff Message***
DATE: 03/14/2013 09:40:03 AM

Your RRC referral is currently routing for your RRC placement.  The Unit Team is recommending consideration for 360 days.

I trust this has addressed your concerns but if you need more clarification please contact your Unit Team.

>>> ~^!"WHERRY, ~^!BENJAMIN" <35961060@inmatemessage.com> 3/10/2013 11:53 AM >>To: Warden
Inmate Work Assignment: Safety

Dear Warden:

   I recently was recommended by my Unit team and Case Manager for 300 to 365 days of halfway house.  Sir, I want you to know that before I was incarcerated or convicted, I was placed in "house arrest" by the Honorable District Court Judge Kathlee O'Malley in the Northern district of Ohio.  I was facing a substantial sentence after I was tried by a jury on two counts, both crimes being non-violent crimes and constructive charges of gun possession and drugs.

   I was placed on home monitoring(house arrest) when I was initially charged.  Once convicted, I was placed on home monitoring again to wait sentencing again, facing 360 months to life and eventually I received a term of 235 months on concer with 5 years of supervised release.  I never violated that supervision, nor was considered a threat to the community.  And, eve after I made it from max custody to out-custody, I was permitted to work on a gate pass without incident until my out custody was arbitrarily stripped due it me having mental health issue's and custody points raised as a result.  Otherwise, I did was I w ordered to do.

   First, I most appreciate your consideration.  Second, I most appreciate your humane thought process and treatment of the prisoner's you have been entrusted to manage and house when you gave your speech at A & O.  Your speech forever sticks out in my memory and causes me to really think hard on the many challenges that lay before me upon my release, and I know that I want the best opportunity to  ensure that at least I have at my disposal the tools needed to succeed when I re-enter into society.

   Thus, I hope that you will consider the recommendation made by my Unit Team of 1yr. halfway house.  With me being incarcerated almost 16yrs., it's clear that I need this time to efficiently re-adjust to the many challenges in the community. Again, I did complete 13 months of home confinement prior to my incarceration without incident.  And, my probation officer Ki Donaldson wrote and extensive report as to why the judge should be lenient in sentencing me.   This is information that your office might not be privy too.

   I have no doubt that I will succeed!  And, this is because, I finally learned the value of my liberty.  I do not want to ever subj myself to confinement again.  I may have had incident reports, but I have also had an extensive program history and taken a completed two V.T. courses with mi-nute hours left to finish my apprenticeship course in cooking.  If I am give this opportunit you will not see my face in an inmate suit again.  I will be part of the solution at this point to the mass incarceration of Americans.  Big challenge, but reachable and attainable by the mindset I have placed my thought's in.

   Thank you for your time and assistance in advance.  The 1 yr is needed the more because I have been approved to relocat a state I have never been in, and to get the basic needs in life, a job, clothing, health care(mental as well) and the most part, re-adjust to living in a normal environment.  Thank you for your time and attention and consideration to this matter.  God bles and I only pray that soon after so many years of incarceration I can truly begin to start my life over.

EXHIBIT C

# **\*\*\*\* ATTENTION \*\*\*\***

Due to a breach of internal security on the East compound, visiting for the East compound is canceled and commissary will be restricted until further notice. Commissary will be restricted to $25.00 of hygiene items. Inmates will also be permitted to purchase postage stamps (1 book or equivalent value) and over the counter medications (OTC). Inmates will also be permitted to purchase typewriter ribbons and copy cards during the commissary restrictions. **Do not tamper with internal security devices or otherwise destroy government property.**

AW Hazlewood

<u>EXHIBIT C Page 2.</u>

**If there are no additional internal security breaches, commissary for the East Compound will resume this Monday, April1, 2013. Inmates restoration of visiting for the East Compound will be evaluated next week. DO NOT TAMPER WITH INTERNAL SECURITY DEVICES OR OTHERWISE DESTROY GOVERNMENT PROPERTY.**

**Acting AW Fitzgerald**

April 1, 2013

Mr. Benjamin J. Wherry, Sr.
Reg. No. 35961-060
FCI Ft. Dix
P.O. Box 2000
Fort Dix, New Jersey 08640

CLERK, U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2013 APR  4  AM 10 28

Clerk of the Court
M.H. Choen U.S. Courthouse
400 Cooper Street, RM 1050
Camden, NJ 08102-1570

RE: **WHERRY v. CASE MANAGER COLE, et al.**
    **Civ. Act. No. [ to be assigned ]**

Dear Clerk:

     Please find enclosed Wherry's §§ 2241/3626 petition for
immediate injunctive relief against the defendant's. Wherry
further request that this Court's note that he's requesting
for a three panel judge hearing. **See p. 31 of writ of habeas
corpus petition.** There are exhibits attached as well. We
thank you for your time and assistance in this matter. A copy
of the $5.00 fee is attached to this Clerk's letter that he
made a request for it to be deducted from his prisoner account.
Lastly, Wherry request in accordance to **Bounds v. Smith**,
**52 L.ED.2d 72 (1976), Kn. 3,** aid him with copying the petition
to be served with the Marshal 285 forms and if a fee need be
taken for those copies, make it know to Wherry so he can
sign an extraction payment from his account.

     May you and your staff have a blessed day and God bless
you'll throughout the year.

                              Very truly yours,

                              Mr. Benjamin J. Wherry, Sr.
                              Reg. No. 35961-060

c:   file/bjw
     dnr/bf

Date:  03/30/2013                                                              Location: FTD
Time:  10:43:17 AM

# UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF PRISONS
### Request for Withdrawal of Inmate's Personal Funds

FTD-F-C, 35961060 - WHERRY, BENJAMIN

| Encumbrance No.:  3531 |
|---|

Please charge to my account the sum of **$5.00** and authorize the same to be paid to:

**Contact/FMIS Certification Address**
**District Court, Clerk Us**
**400 COOPER ST**
**RM. 1050**
**CAMDEN**
**NJ 08102-1570**
**United States**

Purpose:  **Court Fees**
Check Memo:

_____
(Signature of Inmate)

**35961060 - WHERRY, BENJAMIN**
(Inmate Register No./Name)

_____
(Signature of Approving Official)

_____
(Signature of Deposit Fund Tech)

_____
(Payment #)

The inmate's personal account has been charged in the amount indicated above.

BP - 199.045 - Jan 2008



✩35961-060✩
Clerk Us District Court
M.H. Cohen U.S. Dist. CT.
400 Cooper ST
RM. 1050
Camden, NJ 08102-1570
United States